UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
\_\_\_\_\_

CHRISTOPHER SINDONE,

           Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

           Defendants.

_____/

Case No. 1:22-cv-1189

Honorable Phillip J. Green

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.8.)

      This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 4).

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. Plaintiff sues the MDOC, as well as the following personnel at MTU: Warden Melinda Braman, Unit Chief Michael Moran, Residential Unit Manager Unknown VanVeek, and Corrections Officers Unknown Somers and Unknown Bowen.

Plaintiff alleges that in 2018, while incarcerated at the St. Louis Correctional Facility, he received training to be a prisoner observer aide (POA). (ECF No. 1, PageID.3.) According to Plaintiff's exhibits, prisoners designated as POAs "may be used to observe other prisoners in a mental health setting who are ordered by a psychiatrist to remain under one-on-one direct observation." (ECF No. 1-3, PageID.16.)

Plaintiff was transferred to MTU in January of 2021 and notified psychiatric services that he was trained as a POA. (ECF No. 1, PageID.3.) Plaintiff "was placed on the roster" and was "assigned for duty almost daily[,] sometimes multiple times in a single day." (*Id.*) On July 29, 2021, Plaintiff and about 20 other POAs were removed from the duty roster. (*Id.*) Plaintiff contends that he was removed from the duty roster because of his Prison Rape Elimination Act (PREA) score. (*Id.*) On August 1, 2021, Defendant Bowen told those POAs affected that they had been temporarily

4

removed "because their PREA scores were PA or PV and informed everyone to kite [Defendant] VanVeek." (*Id.*) Plaintiff spoke to Defendant Somers, who told Plaintiff that he "had previously changed the PREA scores of every POA to NS (No Score) so it was easier for him to do the schedule." (*Id.*)

On August 5, 2021, Defendant Moran circulated a memorandum to all affected POAs, notifying them that MTU policy provided that only those inmates with "NS PREA ratings" were permitted to be POAs. (*Id.*) Plaintiff claims, however, that MDOC policy "states [that] POAs must have compatible PREA scores with inmates being observed." (*Id.*) According to Defendant Moran's memorandum, which Plaintiff has attached to his complaint, the POA Committee at MTU "made an NS as a requirement which allows [them] to assign the POA without having to match scores with the prisoner being observed." (ECF No. 1-2, PageID.13.) This was done because of the "volume of POA assignments" at MTU. (*Id.*)

Plaintiff filed a grievance concerning his removal from the POA roster on August 7, 2021. (ECF No. 1, PageID.3.) He was transferred to STF on September 23, 2021, and was placed on the POA roster there. (*Id.*) Plaintiff contends that in July of 2022, he learned that another POA who had been removed from MTU's roster had also been transferred to STF. (*Id.*) That inmate told Plaintiff that after Plaintiff's transfer, "all the other POAs [at MTU] were rehired." (*Id.*, PageID.4.)

Plaintiff contends that the MDOC's method of assessing PREA ratings "based on crimes committed by the Plaintiff nearly 30 years ago and nearly 20 years ago" violates double jeopardy. (*Id.*, PageID.5.) Plaintiff avers that he has "never been a

5

suspect in any sexual type of crime, nor has he been convicted of any crime of a sexual nature, yet because of MDOC's flawed way of assessing PREA ratings, they have the Plaintiff classified as a potentially aggressive prison rapist (PA)." (*Id.*) Plaintiff contends his rating is based upon a 1997 conviction for aggravated assault and a 2007 conviction for resisting arrest and domestic violence. (*Id.*) Plaintiff alleges that because of his PREA rating, the MDOC has "basically . . . classified him as a sex offender in the prison system." (*Id.*, PageID.6.)

Plaintiff also alleges that Defendants retaliated against him for filing a grievance by transferring him to another facility. (*Id.*, PageID.6–7.) Plaintiff claims further his transfer was to retaliate against a habeas corpus action he filed. (*Id.*, PageID.7.) Plaintiff's transfer "caused him to also lose his other employment at facility food service." (*Id.*) Plaintiff suggests further that Defendants discriminated against him when they terminated his employment and transferred him, yet rehired all the other POAs who had been removed from the roster "because they did not file grievances beyond Step I." (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert the following claims: (1) First Amendment retaliation and access to the courts claims; (2) Fifth Amendment due process and double jeopardy claims; and (3) Fourteenth Amendment due process and equal protection claims. Plaintiff seeks injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.8.)

6

## II. Motion to Appoint Counsel

As noted *supra*, Plaintiff has filed a motion to appoint counsel. (ECF No. 4.) Plaintiff states that the issues involved are complex, and that he has "limited access to the law library and limited knowledge of the law." (*Id.*, PageID.43.) He suggests that he has "made repeated efforts to obtain a lawyer, [but] has received no response." (*Id.*, PageID.44.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Accordingly, Plaintiff's motion to appoint counsel (ECF No. 4) will be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

7

U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive

8

rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Against the MDOC

As noted *supra*, Plaintiff has named the MDOC as a Defendant. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claims against the MDOC are properly dismissed on grounds of immunity. In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claims against the MDOC are also properly dismissed for failure to state a claim.

### B. First Amendment Claims

#### 1. Retaliation

Plaintiff suggests that Defendants retaliated against him in violation of his First Amendment rights by transferring him to another facility after Plaintiff filed a grievance about being removed from the POA roster and after Plaintiff filed a habeas corpus action. (ECF No. 1, PageID.6–7.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff engaged in protected conduct by filing a grievance regarding his removal from the POA roster and by filing a habeas corpus petition. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (noting that "protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . habeas corpus actions"); *Smith v. Campbell*, 250 F.3d 1032,

1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff, therefore, has adequately pled facts regarding the first prong of a retaliation claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Generally, transfers to the general population of another prison are not typically adverse actions. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). A transfer, however, may rise to the level of adverse action if it resulted in some other negative consequence, such as an increase in security level. *See King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005). Plaintiff's complaint is wholly devoid of facts from which the Court could infer that Plaintiff's transfer resulted in negative consequences. Indeed, Plaintiff was transferred from MTU, a Level II facility, to STF, a Level I facility. Moreover, Plaintiff indicates that he was rehired to serve as a POA after he was transferred to STF. Plaintiff, therefore, has failed to sufficiently allege adverse action for purposes of his retaliation claims. Accordingly, such claims will be dismissed.

## 2. Access to the Courts

Plaintiff vaguely contends that Defendants violated his First Amendment rights to access the courts by transferring him after he filed a habeas corpus action. (ECF No. 1, PageID.7.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff references his habeas corpus action as *Sindone v. Braman*, No. 2:21-cv-11570 (E.D. Mich.). Plaintiff, therefore, has sufficiently set forth an underlying cause of action for which there can be an actual injury. Plaintiff's complaint, however,

13

is wholly devoid of facts regarding how Defendants have impeded his right to access the courts. To the extent he asserts that his transfer interfered with his habeas proceedings, public records indicate that the habeas corpus petition noted above is still pending before the United States District Court for the Eastern District of Michigan. Under these circumstances, Plaintiff has failed to show any lost remedy and, therefore, has failed to state a claim for denial of access to the courts. Such claims will be dismissed.

### C. Fifth Amendment Claims

#### 1. Due Process

The Court has liberally construed Plaintiff's complaint to assert Fifth Amendment due process claims against Defendants. The Fifth Amendment's Due Process Clause, however, applies only to claims against federal employees. Here, Plaintiff has sued the MDOC and employees of the MDOC. Plaintiff, therefore, cannot maintain Fifth Amendment due process claims, and such claims will be dismissed. *See, e.g., Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

#### 2. Double Jeopardy

Plaintiff contends that Defendants violated his Fifth Amendment rights to be free from double jeopardy by essentially punishing him for offenses he was already convicted of and sentenced for by using those same offenses to assess his PREA score and remove him from the POA roster. (ECF No. 1, PageID.5.)

14

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause protects against multiple punishments for the same offense. *See United States v. Dixon*, 509 U.S. 688, 696 (1993). The protection against multiple punishments for the same criminal act "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). However, "[a] prison official's decision about inmate job assignments does not equate with a sentencing court's imposition of criminal penalties." *See Sanders v. Bassett*, No. 7:04-cv-00533, 2004 WL 3397937, at *2 (W.D. Va. Sept. 14, 2004). Plaintiff, therefore, cannot maintain Fifth Amendment double jeopardy claims against Defendants, and such claims will be dismissed.

### D. Fourteenth Amendment Claims

#### 1. Due Process

The Court has construed Plaintiff's complaint to assert that his dismissal from the POA position, and the subsequent termination of his employment with food service, violated his Fourteenth Amendment due process rights.

The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether

15

the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's claim fails at the first step, however, because "no prisoner has a constitutional right to a particular job or to any job." *See Ivey*, 832 F.2d at 955; *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment); Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *See Carter v. Tucker*, 69 F. App'x 678, 80 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of his job assignments at MTU did not trigger a right to due process, and his Fourteenth Amendment due process claims will be dismissed.

### 2. Equal Protection

Plaintiff also suggests that Defendants discriminated against him by terminating his employment as a POA and then transferring him to another facility. (ECF No. 1, PageID.7.) He suggests that all the other POAs who had been terminated at MTU were rehired "because they did not file grievances beyond Step I." (*Id.*) The Court has construed Plaintiff's allegations to suggest violations of the Fourteenth Amendment's Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440–41. However, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's claim does not implicate a fundamental right, as he does not have a "constitutional right to a particular job or any job." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Plaintiff also does not allege that he is a member of a suspect class or that Defendants discriminated against him because he was a member of a suspect or quasi-suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th

17

Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

Plaintiff's claim, therefore, is the prototypical "class of one" equal protection claim "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Supreme Court has refused to recognize "class of one" claims in the public employment context. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 606–07 (2008); *see also Davis v. Prison Health Servs.*, 679 F.3d 433, 442 (6th Cir. 2012) (acknowledging that *Engquist* prohibits "class of one" claims in the public employment context—even in that prison employment case—but concluding that Davis raised a traditional class-based discrimination claim, not a "class of one" claim); *Carter v. Mich. Dep't of Corr.*, No. 1:13-cv-37, 2013 WL 3270909, at *13 (W.D. Mich. Jun. 27, 2013) ("Deciding whether a prisoner should be permitted to work in a particular prison job is precisely the sort of discretionary decision contemplated by the Court in *Engquist*."); *Johnson v. Grayson Cnty. Det. Ctr.*, No. 4:21-cv-P13-JHM, 2021 WL 3025452, at *3 (W.D. Ky. Jul. 16, 2021) (collecting cases and noting that "[s]everal courts have extended the reasoning in *Engquist* to the prison context"); *Brown v. Partin*, No. 1:20-CV-235-TRM-CHS, 2020 WL 5077037, at *2 (E.D. Tenn. Aug. 27, 2020) ("[A] 'class of one' theory . . . is not available in the context of prison employment."). Plaintiff, therefore, cannot maintain Fourteenth Amendment equal protection claims against Defendants, and such claims will be dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 4).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated: January 24, 2023          /s/ Phillip J. Green
                                 PHILLIP J. GREEN
                                 United States Magistrate Judge